NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2807
_____

QIU YUN XIE,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent
_____

On Petition for Review from an
Order of the Board of Immigration Appeals
(Board No. A098-594-156)
Immigration Judge:  Honorable Susan G. Roy
_____

Submitted Under Third Circuit LAR 34.1(a)
September 23, 2011

Before:  FISHER, HARDIMAN and GREENAWAY, JR., *Circuit Judges*.

(Filed: September 26, 2011)
_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Qiu Yun Xie applied for asylum, withholding of removal, and protection under the

Convention Against Torture.  An Immigration Judge (IJ) denied her application, and the

Board of Immigration Appeals (BIA) affirmed the IJ's ruling. Xie now petitions for review. We will deny her petition.

I

1

Xie was born in 1978 in Fujian Province, China. According to her application and testimony, in early 1998 she began dating Chen Vin, whom she had known for over a year. After introducing each other to their respective parents, the couple began living together. They were not married, however, because Xie was not old enough under Chinese law.

In June 1998, Xie learned that she was about two months pregnant. Because Xie's pregnancy violated China's family planning policy—which prohibits a woman from having a child at nineteen years old and while unmarried—she went into hiding at her aunt's house in Erlou Village.

After approximately three months in hiding, Xie was discovered during a surprise national identification card check conducted by government officials in Erlou. The officials noticed that Xie's "belly was showing," so they took her to Changle City Hospital, where a nurse performed an abortion. Following the abortion, Xie's relationship with her boyfriend and his family gradually dissolved.

Although Xie wanted to leave China as early as 1999, her family lacked the means to arrange the trip. In 2003, her family's financial situation finally allowed them to pay a

2

smuggler to take Xie out of the country. After stops in Hong Kong and Brazil, Xie claims that she wound up in Venezuela, where she was kept in a house for about a year with limited contact with the outside world. In August or September of 2004, she was transported to Mexico, where she remained in confinement for about a month. She was then brought to the United States border. After about a day of traveling—crossing a small river and climbing through mountainous terrain—Xie arrived in Texas, where she was checked into a hotel and then put on a bus. About a half an hour later, U.S. officials stopped the bus and took Xie into custody.

2

On December 12, 2005, Xie submitted an application for asylum under the Immigration and Nationality Act (INA) § 208(a), 8 U.S.C. § 1158(a), and withholding of removal under both INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and Article 3 of the Convention Against Torture (CAT), claiming that she was persecuted under China's family planning policies. The Department of Homeland Security issued Xie a Notice to Appear, charging her with removability under § 212(a)(6)(A)(i) of the INA, 8 U.S.C. § 1182(a)(6)(A)(i). Xie conceded removability but renewed her request for asylum, withholding of removal, and protection under CAT.

On August 29, 2008, the IJ denied Xie's application, finding that her testimony and evidence were deficient in ways that, "when considered cumulatively, add up to the fact that [she] did not provide credible testimony [and] . . . has failed to meet her burden

3

of proof." First, the IJ found that Xie failed to present reasonably obtainable evidence to corroborate that she was ever pregnant, and her testimony that her mother tried but was unable to obtain such documentation was "in direct contradiction to her mother's second letter in which her mother explains in great detail her effort to get an abortion certificate . . . but does not mention any efforts to get medical proof that [Xie] was ever pregnant." Second, the IJ observed that Xie's "testimony became hesitant" at times and did not appear "forthright and spontaneous"; Xie "would repeat the question in her answer[,] . . . . would stretch out her answers, . . . [and] would stumble on the words." Third, the IJ deemed Xie's story about spending a year in Venezuela "unpersuasive, implausible at best" and noted that it was "a glaring omission in both her own asylum application and her mother's first and second letters." Fourth, the IJ declared that letters from Xie's mother "just simply cannot be given the full weight that [Xie] would like them to be given" either because they omitted key details or because Xie "told her mother exactly what to say so that [the letters] would comport with what was in her [application]." Finally, the IJ found that there were "significant omissions" from Xie's asylum application—"most importantly, . . . her address in New Jersey"—and that such "carelessness . . . in this regard is again another factor" in discrediting her testimony. The IJ also noted that Xie was "unable to articulate where she lived in New Jersey," only "com[ing] up with a partial address after many stuttering false starts and pauses."

On appeal, the BIA affirmed the IJ's decision, "conclud[ing] that the Immigration

4

Judge's adverse credibility finding [was] properly based on the totality of the circumstances" and "[i]n the absence of credible testimony, . . . [Xie] has not established a well-founded fear of persecution."

Xie petitions for review, arguing that the IJ's adverse credibility determination was unsupported by the evidence and that her credible testimony established a reasonable fear of future persecution.[1]

## II

To qualify for withholding of removal, an applicant must establish that there is a "clear probability" of persecution in the country to which an applicant will be removed. *Chen v. Gonzales*, 434 F.3d 212, 216 (3d Cir. 2005); *see also* 8 U.S.C. § 1231(b)(3)(A). An asylum application, on the other hand, requires the applicant to show only that she is "unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, [her] country because of [past] persecution or a well-founded fear of [future] persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(B)(i); 8 C.F.R. § 1208.13(b)(1). "[A]n applicant has a well-founded fear of persecution if . . . [t]here is a reasonable possibility" that she will suffer it, 8 C.F.R. § 1208.13(b)(2)(i), and a showing of past persecution creates a rebuttable presumption of such a well-founded

---

[1] Xie's appeal to the BIA did not challenge the IJ's denial of her CAT claim. That argument is therefore waived.

fear, 8 C.F.R. § 1208.13(b)(1). A woman who undergoes a forced abortion pursuant to her country's population control laws is "deemed to have been persecuted on account of political opinion," and one who fears such a procedure is "deemed to have a well founded fear of persecution on account of political opinion." 8 U.S.C. § 1101(a)(42)(B).

The IJ explicitly stated that "if [Xie]'s testimony is to be believed, she is a refugee as that term is defined in Section 101(a)(42) of the [INA]"; therefore, we need not consider the merits of her underlying claim. Instead, we review only the agency's determination that Xie's testimony was incredible.

In the immigration context, factual findings made by the agency, including credibility determinations, "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *Gabuniya v. Att'y Gen.*, 463 F.3d 316, 321 (3d Cir. 2006). Under this "extraordinarily deferential standard," *Abdulrahman v. Ashcroft*, 330 F.3d 587, 598 (3d Cir. 2003), findings "will be upheld if [they are] 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Lin-Zheng v. Att'y Gen.*, 557 F.3d 147, 155 (3d Cir. 2009) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)).

Xie's application was filed after May 11, 2005, so the REAL ID Act of 2005 § 101(a)(3), 8 U.S.C. § 1158(b)(1)(B)(iii), applies. Accordingly, the agency's credibility determination was based on "the totality of the circumstances, and all relevant factors," including:

6

the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, *without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim*, or any other relevant factor.

§ 1158(b)(1)(B)(iii) (emphasis added). Because the IJ has the greatest opportunity to observe the witness and weigh these factors, she "is normally in the best position to make credibility determinations as [s]he is 'uniquely qualified to decide whether an alien's testimony has about it the ring of truth.'" *Chen*, 434 F.3d at 220–21 (quoting *Abdulrahman*, 330 F.3d at 597).

An adverse credibility finding differs, however, from a finding that the applicant has failed to corroborate her testimony, and "corroboration and credibility . . . are distinct concepts that should be analyzed independently." *Toure v. Att'y Gen.*, 443 F.3d 310, 323 (3d Cir. 2006) (citing *Chen*, 434 F.3d at 221). "The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 1208.16(b); *see also Yusupov v. Att'y Gen.*, --- F.3d ----, 2011 WL 2410741, at *6 (3d Cir. June 16, 2011). An applicant's ability to corroborate her story must be analyzed under a three-part test announced in *Abdulai v. Ashcroft*, 239 F.3d 542, 554 (3d Cir. 2001).

7

When the BIA adopts or defers to the underlying decision of the IJ, we review the IJ's opinion as the decision of the agency. *See Id.* at 549 n.2. In this case, because the BIA "substantially relied upon the adverse credibility finding of the IJ," as well as the IJ's analysis of the record, we will review both opinions' discussions of Xie's credibility. *Xie v. Ashcroft*, 359 F.3d 239, 242 (3d Cir. 2004).

III

Xie correctly points to a number of flaws in the IJ's oral opinion. For instance, Xie's omission of the Venezuela story from her application and her mother's omission of it from her letters should have had no bearing on her credibility given that Xie's trip to the United States (and any unpleasantness along the way) was unrelated to whether she was persecuted or fears future persecution in China. Moreover, the IJ's insistence that Xie coached her mother and "told her . . . exactly what to say" is unsupported by the record, as Xie testified only that she asked her mother to search for documentation relating to her pregnancy and abortion and to write letters regarding persecution in China. She explicitly *denied* telling her mother what to say, and the Government presented no evidence to the contrary. Finally, the fact that the letters made no mention of her mother's search for proof of the *pregnancy* (rather than just proof of the *abortion*) did not "direct[ly] contradict[]" Xie's testimony that she asked her mother for both. It was merely an omission or a lack of corroboration, which should have been analyzed under *Abdulai*'s three-factor test. *See* 239 F.3d at 554. When examining the letters, the IJ alluded to the

8

first two factors—whether it was "reasonable to expect corroboration" and whether Xie actually provided any—but did not explain why Xie's explanation for that failure (*i.e.*, her testimony that the doctor had "move[d] away, [her mother] couldn't find him") was inadequate. A more precise analysis would have addressed Xie's credibility and her lack of corroboration separately, as the law requires.

We must nevertheless deny Xie's petition because nothing in the record "would . . . compel[ any reasonable adjudicator] to conclude" that Xie *was* credible. 8 U.S.C. § 1252(b)(4)(B). Although the "totality of circumstances" cited by the IJ would perhaps not convince us to discredit Xie's testimony were we to decide the matter in the first instance, they also do not compel us to reach the opposite conclusion on appeal. Nor does Xie cite anything in the record that would meet her burden under our "extraordinarily deferential standard." *Abdulrahman*, 330 F.3d at 598. In addition, the IJ and BIA considered several appropriate credibility factors, including Xie's "demeanor, candor, [and] responsiveness"—demeanor being "'often a critical factor[s] in determining . . . veracity,'" *Dia v. Ashcroft*, 353 F.3d 228, 252 n.23 (3d Cir. 2003) (en banc) (quoting *Aguilar-Solis v. INS*, 168 F.3d 565, 570–71 (1st Cir. 1999))—as well as "the inherent plausibility of [her] account." 8 U.S.C. § 1158(b)(1)B)(iii). Because these were both valid reasons to doubt Xie's credibility, it was entirely appropriate for the IJ to look for corroborating evidence, which Xie failed to provide for any part of her claim. The IJ's and BIA's decisions were therefore supported by substantial evidence, as required by *Dia*,

353 F.3d at 247–48 (citing *Elias-Zacarias*, 502 U.S. at 481–84).  Without any evidence to refute the adverse credibility finding, Xie's petition cannot succeed.

IV

For the foregoing reasons, we will deny Xie's petition for review.